**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>UNIQUE FABRICATING, INC.,<br><br>      Debtor. | Chapter 7<br><br>Case No. 23-11824 (KBO) |
| In re:<br><br>UNIQUE FABRICATING NA, INC.,<br><br>      Debtor. | Chapter 7<br><br>Case No. 23-11825 (KBO) |
| In re:<br><br>UNIQUE FABRICATING SOUTH, INC.,<br><br>      Debtor. | Chapter 7<br><br>Case No. 23-11826 (KBO) |
| In re:<br><br>UNIQUE-PRESCOTECH, INC.,<br><br>      Debtor. | Chapter 7<br><br>Case No. 23-11827 (KBO) |
| In re:<br><br>UNIQUE-CHARDAN, INC.,<br><br>      Debtor. | Chapter 7<br><br>Case No. 23-11828 (KBO) |
| In re:<br><br>UNIQUE MOLDED FOAM TECHNOLOGIES, INC.,<br><br>      Debtor. | Chapter 7<br><br>Case No. 23-11829 (KBO) |
| In re:<br><br>UNIQUE-INTASCO USA, INC.,<br><br>      Debtor. | Chapter 7<br><br>Case No. 23-11830 (KBO) |

1

| In re: | |
|---|---|
| UNIQUE FABRICATING REALTY, LLC, | Chapter 7 |
| Debtor. | Case No. 23-11831 (KBO) |

**FCA US LLC'S MOTION FOR RELIEF FROM THE
AUTOMATIC STAY TO OBTAIN POSSESSION OF TOOLING**

FCA US LLC ("FCA US"), for itself and its applicable affiliates, through its counsel Womble Bond Dickinson (US) LLP and Dickinson Wright PLLC, respectfully requests that this Court grant FCA US relief from the automatic stay (to the extent the automatic stay is applicable) in order for FCA US to take possession of its FCA US-owned tooling currently located at the Debtors' facilities. In support of this Motion, FCA US relies on 11 U.S.C. § 362(d) and the facts and authorities provided in this Motion.

### I. Introduction

This is a motion for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and § 362(d)(2), to the extent the stay is applicable. Unique Fabricating, Inc. and the related debtors (collectively, "Debtors") filed Chapter 7 petitions with this Court on November 8, 2023. The cases have been labeled as "no-asset" cases. An interim Chapter 7 Trustee has been appointed. FCA US, through counsel, has contacted the interim trustee to determine if he will consent to stay relief or agree that the automatic stay does not apply to FCA US's tooling located at the Debtors' facilities. Due to the urgent nature of this matter, FCA US also is filing this Motion to obtain stay relief and a companion Motion to Expedite Hearing.

The Debtors, prior to the commencement of Chapter 7 on November 8, 2023, manufactured parts for FCA US. Those parts are used by FCA US in its vehicles. Without them, FCA US cannot manufacture several of its vehicle brands in North America. With the filing of Chapter 7, the Debtors' operations have ceased. As a result, unless FCA US obtains

2

immediate access to and possession of its tooling, FCA US will have to close many of its vehicle assembly lines in North America.

Until the Chapter 7 filings, the Debtors used FCA US's assets, known as tooling, to manufacture parts for FCA US. Those FCA US assets are unique, critical to the production of parts for FCA US and specific to FCA US's vehicles. The Debtors are in possession of certain tooling—the *only* sets of tooling—that is vital for the ongoing production of FCA US's vehicles. Yet the Debtors have no right to retain this tooling under the governing contracts between the parties. To avoid irreparable harm to FCA US (which will occur if it must shut down its vehicle production lines, FCA US needs access to remove the tooling from the Debtors' facilities so that it can be relocated to an alternate supplier who is willing to manufacture FCA US's parts.

It is unquestionable that the tooling FCA US seeks to recover is FCA US-owned property. Prior to the Chapter 7 filings, FCA US, the Debtors and various other parties entered into an Accommodation Agreement, a copy of which is attached hereto as **Exhibit A** as it was filed by the Debtors in their SEC filings.[1] That Accommodation Agreement includes an express acknowledgement that the FCA US tooling at issue here is owned by FCA US and held by the Debtors as bailees-at-will. Further, the Debtors acknowledged that they had no right, title or interest in the tooling other than the right, subject to FCA US's discretion, to use the tooling in the manufacture, transport and delivery of parts for FCA US. Further, the Debtors acknowledged that FCA US and its affiliates have the right to take immediate possession of the tooling at any time without payment of any kind should FCA US elect to exercise such right. The Debtors also acknowledged that any failure to provide FCA US access to its tooling would

---

[1] The tooling acknowledgement contained in the Accommodation Agreement expressly survived any termination or expiration. Accommodation Agreement, Ex. A, ¶ 3.H.xi.

result in irreparable harm and money damages would be an inadequate remedy. The rights in the Accommodation Agreement were also in addition to those rights in FCA US's Purchase Orders, which include that FCA US may at any time remove its tooling and the Debtors have no right, title or interest in the tooling except to use it as determined by FCA US in its sole discretion. [2]

The Debtors have commenced Chapter 7 cases and have ceased operations, thereby jeopardizing FCA US's ability to continue assembling vehicles in North America especially if the tooling cannot be removed and used by alternative suppliers to manufacture parts for FCA US.  In short, whereas the tooling is useless to the Debtors at this point, FCA US stands to suffer enormous losses if the tooling is retained by the Debtors. These facts amply establish "cause," and thereby justify relief under § 362(d)(1) to the extent the automatic stay is applicable[3].

FCA US is entitled to relief under § 362(d)(2) as well.  FCA US has paid for and is the owner of the tooling specific to FCA US's parts that remains at the Debtors' facilities and, therefore, the Debtors have no equity in the tooling.  Moreover, there is no value in the tooling other than for FCA US—the tooling is specific to parts for FCA US and its vehicles. The tooling also is not necessary to an effective reorganization. Obviously, the Debtors have filed Chapter 7 cases.  Production has halted and an interim trustee has been appointed. Clearly, there is no possibility that the Debtors will restart operations. There will be no reorganization. With

---

[2] The Purchase Orders and the governing Production and Mopar Purchasing Terms and Conditions (collectively, "Purchase Orders") are voluminous but can be made available as necessary to the Trustee or this Court. A sample Purchase Order is attached as **Exhibit B**.

[3] As set forth in the Accommodation Agreement and Purchase Orders, the Debtors had no right, title or interest in the tooling and it is questionable whether the automatic stay is applicable. Nevertheless, to the extent mere possession of the tooling by the Debtors at the time of the filing requires stay relief in order for FCA US to enter the facilities and remove its tooling, FCA US seeks such stay relief and requests the trustee cooperate with FCA US as it works to remove its tooling from the Debtors' facilities (which FCA US intends to perform at its sole cost and expense).

production halted and customers suffering immediate damages, the Debtors' estates have no interest in retaining the tooling. These facts justify relief for FCA US under § 362(d)(2) as well.

For these reasons, FCA US respectfully requests that this Court grant it relief under § 362(d)(1) and/or (d)(2) and allow FCA US to immediately reclaim all of its tooling from the Debtors' facilities.

## II. Facts and Procedural History

### A. FCA US and Just-In-Time Production

FCA US is an original equipment manufacturer ("OEM") of vehicles, based in Auburn Hills, Michigan. Until commencing these Chapter 7 cases, the Debtors operated as a supplier to FCA US. FCA US entered into contracts for the production of parts with the Debtors and FCA US issued purchase orders directly to the Debtors. *See* Sample Purchase Order with Governing Terms, attached as **Exhibit B**. FCA US retains sole and exclusive ownership of the tooling necessary to make its parts.

Continued production of FCA US's parts by its suppliers is critical to FCA US's business. This need for continued production is a product of the "just-in-time" manufacturing method employed by FCA US. With the just-in-time method, parts from suppliers are sent to FCA US's assembly plants on an as-needed basis. Consequently, FCA US does not regularly keep a stock or "bank" of parts on hand and could run out of parts within hours if a supplier ceases shipping parts, as has occurred here with the Debtors' Chapter 7 filings.

Suppliers use certain specialized tooling to manufacture parts for FCA US. Without this tooling, it is impossible for FCA US or any other company to manufacture the parts needed by FCA US to manufacture vehicles. And, like most OEMs, FCA US does not maintain (and could not afford to maintain) a duplicate set of tooling for production of all parts manufactured for

5

FCA US. The tooling at the Debtors' facilities, therefore, is vital to FCA US's ability to keep FCA US's plants operating in North America.

### B. The Relationship Between FCA US and the Debtors

Pursuant to FCA US's Production and Mopar Purchasing General Terms and Conditions ("Terms"), which govern its Purchase Orders, the Debtors have possession of the Tooling solely as bailees—without any corresponding rights except the right to use the tooling solely as permitted by FCA US unless and until FCA directs the Debtors to transfer the tooling back to FCA US or its designee. *See* Terms attached as part of the Sample Purchase Order as **Exhibit B**. The Terms provide in part:

> FCA US Tooling . . . (the "Bailed Property") is, and will at all times remain, the sole and exclusive property of, and is being held by Seller as a bailee at will for FCA US. . . . Seller acknowledges that title to all such Bailed Property remains in FCA US, and that the Bailed Property will be subject to the direction and control of FCA US. Seller has no rights or interest in any Bailed Property except to use such Bailed Property as directed by FCA US and Seller cannot grant any rights or interest to any person including but not limited to an affiliate of Seller or a third party. . . . Seller has no right to retain possession of any Bailed Property after receipt of written demand, which may be given to Seller by FCA US at any time, for return of Bailed Property.

Terms, Ex. B, ¶ 10.

Moreover, as part of an Accommodation Agreement with FCA US, the Debtors and other parties, the Debtors repeated their acknowledgement that they had no right, title or interest in FCA US's tooling. The tooling acknowledgement in Section 3.H of the Accommodation Agreement is extensive. As part of that acknowledgement, the Debtors' chief restructuring consultant sent to FCA US a list of part numbers for which the Debtors held FCA US tooling.

Based on that acknowledgement, FCA US worked extensively to confirm the tooling owned by FCA US, all of which is shown on **Exhibit C**.

At present, the *only* set of tooling that exists to make many of the parts previously manufactured by the Debtors are located at the Debtors' facilities. That tooling specifically includes the tooling identified in **Exhibit C**. And as of November 8, 2023, the date of the Debtors' commencement of these Chapter 7 cases, the Debtors' production has essentially shut down, creating an imminent threat to FCA US's production. In order to avoid a potentially devastating shutdown of FCA US's manufacturing plants, it is necessary for FCA US to reclaim the tooling as soon as possible. Therefore, FCA US on an emergency basis respectfully requests that this Court grant its Motion to lift stay pursuant to 11 U.S.C. § 362(d)(1) and or (d)(2).

### III.     Argument

#### A.     Jurisdiction, Venue, and Legal Authority

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. Venue is proper in this Court according to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief sought in this Motion include 11 U.S.C. §§ 105 and 362 and Fed. R. Bankr. P. 4001.

#### B.     The Tooling Is Not Subject to the Automatic Stay.

Although this Motion establishes below that FCA US is entitled to reclaim its tooling under §§ 362(d)(1) and (d)(2), it is unnecessary for the Court to reach those issues. In fact, the tooling is not subject to the automatic stay.

The automatic stay prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). A debtor's "estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Bankruptcy courts have consistently held that this provision bars a creditor from obtaining possession of property that is

*lawfully* in the debtor's possession. *See, e.g., St. Clair v. Beneficial Mortgage Company (In re St. Clair),* 251 B.R. 660 (D.N.J. 2000), *aff'd sub nom.* 281 F.3d 224 (3d Cir. 2001). This rule applies, however, only when the debtor has "a good-faith, colorable claim to possession." *St. Clair,* 251 B.R. at 666-668.

The nature and extent of a debtor's interest in property is determined by applicable non-bankruptcy law. *Butner v. United States,* 440 U.S. 48, 54–55, 99 S. Ct. 914, 59 L.Ed.2d 136 (1979); *Crysen/Montenay Energy Co. v. Esselen Associates, Inc. (In re Crysen/Montenay Energy Co.),* 902 F.2d 1098, 1101 (2nd Cir.1990); *St. Clair*, 251 B.R. at 667. Particularly, here, it is determined by the Purchase Orders and Accommodation Agreement and Michigan law governing those contracts. In particular, "[i]t is necessary to examine whether the debtor owns the property absolutely, conditionally, or merely through some lesser relationship, such as a bailment, agency, or consignment, whereby the goods actually belong, save for the debtor's right to possession, completely to another." *In re Lan Tamers, Inc.,* 281 B.R. 782, 789 (Bankr. D. Mass. 2002). It is axiomatic that property held in trust by a Debtor on behalf of another is not property of the estate. *Mitsui Mfrs. Bank v. Unicom Computer Corp. (In re Unicom Computer Corp.),* 13 F.3d 321, 324 (9th Cir.1994); *Connecticut General Life Ins. Co. v. Universal Ins. Co.,* 838 F.2d 612, 619 (1st Cir.1988).

Here, FCA US's Terms and the Accommodation Agreement establish that the tooling is owned by FCA US, is held solely by Debtors as a bailee,[4] and must be returned to FCA US, with

---

[4] "Bailment," in its ordinary legal signification, imports the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished. *In re George L. Nadell & Co., Inc.,* 294 Mich. 150, 154, 292 N.W. 684 (1940); *National Ben Franklin Ins. Co. v. Bakhaus Contractors, Inc.,* 124 Mich. App. 510, 512, n. 2, 335 N.W.2d 70 (1983). Phrased another way, it is a relationship wherein a person gives to
Footnote continued on next page …

8

or without cause, upon FCA US's demand.  *See* Terms, Ex. B, ¶ 10; Accommodation Agreement, Ex. A, ¶ 3.H.  The Debtors' continued possession of the tooling is contrary to FCA US's rights under the Terms (which govern the Purchase Orders) and the Accommodation Agreement.  As such, the Debtors do not have a "good faith, colorable claim to possession" and the tooling is not part of the Debtors' estates.  *Cf. St. Clair,* 251 B.R. at 666-668.  Therefore, the tooling is not subject to the automatic stay and should be returned to FCA US.

    **C.**    **FCA US Is Entitled To Possession of Its Tooling Under 11 U.S.C. § 362(d)(1).**

        **1.**    **Legal Standard For Relief Under § 362(d)(1)**

Section 362 of the Bankruptcy Code provides that, once a debtor has filed a petition under title 11, creditors are prohibited from taking certain actions, including: "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362.  Applying this section, the Third Circuit Court of Appeals has held that "mere possession of property at the time of filing is sufficient to invoke the protections of the automatic stay."  *In re Atlantic Business and Community Corp.,* 901 F.2d 325, 328 (3d Cir. 1990).  However, the Bankruptcy Code includes critical exceptions to this rule, two of which are applicable in this case.

The first applicable exception is set forth in § 362(d)(1), which provides that the automatic stay may be lifted "for cause, including the lack of adequate protection of an interest in property of such party in interest[.]"  In determining whether a party has established cause sufficient to lift the automatic stay, bankruptcy courts typically conduct a case-by-case analysis

---

Continued from previous page …
another the temporary use and possession of property other than money, the latter agreeing to return the property to the former at a later time.  *Godfrey v. City of Flint,* 284 Mich. 291, 295–296, 279 N.W. 516 (1938).

to determine whether the movant has established that "the balance of hardships from not obtaining relief tips significantly in [its] favor." *Atl Marine, Inc. v. Am. Classic Voyages, Co. (In re American Classic Voyages, Co.),* 298 B.R. 222, 225 (D. Del. 2003); *see also in re RNI Wind Down Corp.,* 348 B.R. 286, 299 (Bankr. D. Del. 2006) (citing balancing test).

The party seeking relief from the automatic stay need only establish a prima facie case of cause for relief. *See, e.g., Joyner Auto World v. George (In re George),* 315 B.R. 624, 627 (Bankr. S.D. Ga. 2004) (citations omitted). Once this prima facie case is established, "the burden shifts to the debtor to prove cause does not exist." *Id.; see also Matter of Fernstrom Storage & Van Co.,* 938 F.2d 731, 735 (7th Cir. 1991). If cause is established, the court must grant relief from the automatic stay. *See* 11 U.S.C. §362(d)(1) (stating that a court "shall" lift the automatic stay upon a showing of cause). *See also In re Zeoli*, 249 B.R. 61, 63 (Bankr. S.D.N.Y. 2000) (noting that relief from the automatic stay is "mandatory" if the statutory grounds for relief have been established).

### 2. The Equities Weigh Strongly in Favor of FCA US.

"Cause" for purposes of § 362 may be established where "continuance of the stay outweighs the hardship to the debtor caused by stay modification." *In re Chan,* 355 B.R. 494, 498 (Bankr. E.D. Pa. 2006). In this case, the potential hardship to FCA US vastly outweighs any benefit that might be derived through the automatic stay.

At this point, the Debtors have ceased all production. They are not producing the parts necessary FCA US's use in assembling vehicles. Lifting the automatic stay would therefore maintain the status quo as far as the Debtors and their estates are concerned: they are not using the tooling now that production has ceased and would have no use for the tooling in the foreseeable future.

In contrast, allowing FCA US to reclaim the tooling would protect vital business and financial interests for FCA US. As noted above, FCA US's just-in-time production method requires constant delivery—and, thus, constant production—from its suppliers in order to insure FCA US's ability to maintain production at its vehicle assembly plants. The cessation of production for any reason results in damages to FCA US that are incalculable and irreparable—precisely the sort of "immediate and dramatic consequences" noted by the District Court for the Eastern District of Michigan in *Kelsey-Hayes Co. v. Galtaco Redlaw Castings Corp.,* 749 F. Supp. 794, 798 n. 7 (E.D. Mich. 1990) (noting that "[a] supplier's failure to make scheduled shipments may have immediate and dramatic consequences").[5]

Aside from the disparity between the enormous harm that will befall FCA US if the stay remains in place, compared to the minimal harm that the Debtors or their estates would incur if the stay is modified, there is the indisputable fact that, notwithstanding the rights conferred by the Bankruptcy Code, the Debtors have no legal or equitable interests in the tooling. As set forth in FCA US's Terms and the Accommodation Agreement, the Debtors have no ownership or possessory rights in the tooling now that FCA US has requested possession of its assets be returned to FCA US. Rather, the Debtors are merely bailees. Consequently, the Debtors are in possession of the tooling solely at FCA US's behest, may use the tooling only as directed by

---

[5] *See also General Motors Corp. v. Paramount Metal Products Co.,* 90 F. Supp. 2d 861, 875 (E.D. Mich. 2000) (observing that GMC would have lost millions of dollars per day if Paramount immediately ceased production of the plaintiffs' seat frame requirement); *In re Auto Style Plastics, Inc.*, 216 B.R. 784, 788 (Bankr. W.D. Mich. 1997) (noting that where the debtor was a "single source" supplier to GM, interruption of production of parts would shut down assembly lines of GM, resulting in layoffs of a large number of GM employees and the debtor's other customers, and calculating that such a shutdown could result in damages in excess of $9 million per day).

FCA US, and must return the tooling immediately at FCA US's demand—with or without cause. *See* Terms, Ex. B, ¶ 10.

The tooling does not belong to the Debtors and, indeed, is of little value to the Debtors now that they have ceased production. The Debtors' continued possession of the tooling, therefore, would do little to advance the fundamental purpose of the automatic stay: the goal of protecting a debtor's assets. *See, e.g., In re Webb,* 294 B.R. 850, 853 (Bankr. E.D. Ark. 2003). Where, as in this case, "bankruptcy serves no legitimate purpose in retaining the debtor's possession, then the property owner should be granted relief from the stay to exercise its non-bankruptcy law rights to recover possession from the debtor." *In re Dunlop,* 378 B.R. 85, 92 (Bankr. E.D. Pa. 2007); se*e also In re Moore,* 267 B.R. 111, 117-118 (Bankr. E.D. Pa. 2001) (stating that cause existed to lift automatic stay where estate did not have sufficient interest in property).

D. **FCA US Is Entitled To Possession of Its Tooling Under 11 U.S.C. § 362(d)(2).**

A court may also grant relief from the automatic stay if (a) the debtor lacks equity in the property at issue and (b) the property "is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2). Both elements are satisfied in this case. First, the Debtors have no equity in the tooling because FCA US has paid for this tooling in full. Moreover, the tooling is of no value to the Debtors unless the Debtors continue production for FCA US. At this time, the Debtors have completely ceased production for *all* its customers, including FCA US.

Nor is the tooling necessary to the Debtors' effective reorganization. These are Chapter 7 cases, which the Debtors voluntarily filed. As noted above, the Debtors have no property rights in the tooling. There is no credible argument that the tooling (in which the estate has no property rights) is necessary for any further actions by the Debtors or the Trustee. This is especially the

12

case here, where the Debtors have ceased production, and have thereby rendered the tooling completely valueless to the Debtors.

Therefore, in addition to § 362(d)(1), FCA US is entitled to relief from the automatic stay under § 362(d)(2) because of the Debtors' lack of equity in the tooling and the unlikelihood of reorganization at all given these cases are pending under Chapter 7.

**WHEREFORE,** FCA US respectfully requests that this Court (a) lift the automatic stay pursuant to 11 U.S.C. § 362(d) in order to allow FCA US to take possession of its tooling; (b) direct the trustee to permit FCA US access to the Debtors' facilities to remove its tooling; and (c) grant such additional relief as this Court deems just and equitable.

Dated: November 9, 2023

Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Matthew P. Ward*
Matthew P. Ward (Del. Bar No. 4471)
Elazar A. Kosman (Del. Bar No. 7077)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email: matthew.ward@wbd-us.com
Email: elazar.kosman@wbd-us.com

and

**DICKINSON WRIGHT PLLC**
James A. Plemmons (Mich. P42892)
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
Telephone: (313) 223-3500
Facsimile: (844) 670-6009
Email: jplemmons@dickinsonwright.com

and

**DICKINSON WRIGHT PLLC**
M. Kimberly Stagg (Tenn. 16820)
424 Church Street, Suite 800
Nashville, Tennessee 37219
Telephone: (615) 244-6538
Facsimile: (844) 670-6009
Email: kstagg@dickinsonwright.com

*Counsel to FCA US LLC*